# EXHIBIT 4

Exhibit 4 to Declaration of Albert E. Fowerbaugh, Jr.
JPMorgan Chase Bank, N.A. v. Republic Mortgage Insurance Company, et al.
Case No. 2:10-CV-06141 (WJM) (MF)

| Second Amended Complaint Allegations | Arbitration Demand Allegations |
|---|---|
| 2. During the housing boom of 2001 to 2005, RMIC issued mortgage insurance policies to Chase, profiting handsomely from the premiums Chase paid for the coverage. The well-documented financial crisis of 2007 to 2009, however, spelled disaster for RMIC as the number of defaults on mortgage loans it insured skyrocketed and RMIC's financial position weakened. | 2. During the housing boom of the early 2000s, RMIC profited handsomely from premiums paid for coverage under mortgage insurance policies. The well-documented financial crisis that swept the United States around 2008, however, was disastrous for RMIC, as the number of defaults on mortgage loans it insured skyrocketed, and RMIC's financial position weakened. |
| 3. In response to these events, RMIC improperly engaged in "self-help," routinely denying valid claims submitted by Chase or other insureds for covered losses. In particular, RMIC engaged in bad faith investigations aimed at uncovering information (often of dubious reliability) it could invoke as a pretext for exercising its strictly limited right of rescission. RMIC had no valid basis for rescinding coverage, however, because the information it purportedly discovered did not justify rescission of the policies and/or the rescissions were otherwise barred under the policies or applicable law. | 3. In response to the growing number of defaults on which it was forced to pay out under insurance policies it issued, RMIC engaged in improper and extra-contractual "self-help" measures, including purporting to "rescind" mortgage insurance coverage in reliance on pretextual bases for the supposed "rescission." |
| 17. From 2001 to 2005, the United States mortgage industry grew at an unprecedented rate. An expanding economy, low unemployment, historically low interest rates and a rising housing market all contributed to a vast increase in the number of mortgage loan originations. | 14. From 2001 to 2005, the United States mortgage industry grew at an unprecedented rate. An expanding economy, low unemployment, historically low interest rates and a rising housing market all contributed to a vast increase in the number of mortgage loan originations. |
| 27. During the growth years, RMIC faced a low level of claims activity and generally paid claims in a timely fashion pursuant to the terms of the Mortgage Insurance Policies. RMIC almost never purported to rescind coverage on mortgage loans. | 15. Upon information and belief, during the growth years, a relatively small number of claims were made on the large volume of mortgage insurance policies that mortgage insurance companies such as RMIC issued; thus, RMIC generally paid claims in a timely fashion pursuant to the terms of the policies and almost never purported to rescind coverage on mortgage loans. |

*Excerpted allegations are illustrative, not exhaustive, of the duplicative nature of the Second Amended Complaint and the Demand.*

Exhibit 4 to Declaration of Albert E. Fowerbaugh, Jr.
JPMorgan Chase Bank, N.A. v. Republic Mortgage Insurance Company, et al.
Case No. 2:10-CV-06141 (WJM) (MF)

| Second Amended Complaint Allegations | Arbitration Demand Allegations |
|---|---|
| 28. The favorable market conditions that allowed RMIC to reap record profits did not last. In 2008 and 2009, the global economy suffered a well-documented financial crisis, marked in this country by increased unemployment and a decline in housing prices. According to the United States Department of Labor, the national unemployment rate rose to over ten percent during the crisis. Even today, unemployment remains at or near historically high levels. | 16. The favorable market conditions that allowed RMIC to reap record profits did not last. Around 2007, housing prices began to decline and unemployment began to increase, marking the beginning of a financial crisis in this country that soon had spread around the globe. |
| 30. Prior to the financial crisis, homeowners facing financial pressure could often avoid default and eventually foreclosure by selling their homes and paying off their mortgage loans with the sale proceeds. Persistent declines in the demand for housing over the past several years, however, eliminated that option for many borrowers. The decreased demand for housing also depressed the amount lenders recovered through foreclosure. As a result of these market conditions, mortgage lenders incurred losses on a greater number of loans than at any time in the past, and the magnitude of the losses was substantially higher. | 17. While prior to the financial crisis homeowners facing financial pressure could often avoid default and eventual foreclosure by refinancing their mortgage based upon an appreciation in their home's value or by selling their home and paying off their mortgage loan with the sale proceeds, persistent home price depreciation, declines in the demand for housing, and the construction of non-prime and reduced documentation lending over the past several years eliminated that option for many borrowers. The decreased demand for housing and home price depreciation also reduced the amount lenders recovered through foreclosure. As a result of these market conditions, mortgage lenders incurred losses on a greater number of loans than in the past, and the magnitude of the losses was substantially higher. |
| 31. In the face of these losses, mortgage lenders and investors, including Chase and the investors whose mortgage loans Chase services, sought recovery under the mortgage insurance coverage for which they had bargained and paid. | 18. In the face of these losses, mortgage lenders and investors, including Chase and the investors whose mortgage loans Chase services, sought recovery under the mortgage insurance coverage for which they had bargained and paid. |

2

Exhibit 4 to Declaration of Albert E. Fowerbaugh, Jr.
JPMorgan Chase Bank, N.A. v. Republic Mortgage Insurance Company, et al.
Case No. 2:10-CV-06141 (WJM) (MF)

| Second Amended Complaint Allegations | Arbitration Demand Allegations |
| --- | --- |
| 34. In order to stanch the outflow of payments on claims resulting from the financial crisis, RMIC sought to avoid its contractual obligations to pay valid claims by purporting to rescind coverage on scores of the Individual Policies, ignoring the strict contractual limitations on its ability to do so. RMIC's wrongful purported rescissions have caused and continue to cause substantial harm to Chase. | 19. But in order to stanch the outflow of payments … resulting from the financial crisis, RMIC impermissibly sought to avoid its contractual obligations to pay valid claims by attempting to rescind coverage on the policies it had issued, ignoring the strict contractual limitations on its ability to do so. RMIC's wrongful purported rescissions have caused and continue to cause substantial harm to the certificate holders of the mortgage-backed security titled BSABS 2007-AC6. Chase serves as servicer for BSABS 2007-AC6 following EMC Mortgage LLC's transfer of servicing to Chase. |
| 37. As the plain text of this language makes clear, RMIC's right to rescind exists only in a narrow set of circumstances. 38. As an initial matter, the right only exists where there was a "material misrepresentation" in connection with a particular loan. Even where this condition is met, however, RMIC can only rescind coverage as "permitted by applicable law." | 30. Pursuant to the Master Policy, RMIC's right to rescind exists only in a narrow set of circumstances. Pursuant to Section 2.3 of the Master Policy, as amended: **Certificate Cancellation or Rescission by the Company for Misrepresentation** – Subject to Section 2.4, if any of *the Insured's* representations as described in Section 2.2 are materially false or misleading with respect to a Loan, the Company will have the right, at its option and to the extent permitted by applicable law, to cancel or rescind coverage under any Certificate retroactively to commencement of coverage (or if the misrepresentation occurs with respect to continuation of coverage under assumption of a Loan, retroactively to the date of such continuation) and to return at that time all paid premiums retroactively to such applicable date. *See* Exhibit A, § 2.3 (emphasis added). |

Exhibit 4 to Declaration of Albert E. Fowerbaugh, Jr.
JPMorgan Chase Bank, N.A. v. Republic Mortgage Insurance Company, et al.
Case No. 2:10-CV-06141 (WJMj (MF)

| Second Amended Complaint Allegations | Arbitration Demand Allegations |
|---|---|
| 39. RMIC's rescission rights are further limited by Section 2.4 of the Master Policies, which provides, in relevant part: | 31. RMIC's rescission rights are even further limited, however, by Section 2.4 of the Master Policies – the so-called "incontestability" provision – which provides in relevant part |
| **Incontestability for Certain Misrepresentations.** Notwithstanding Sections 2.2 or 2.3, no Claim for Loss will be denied or adjusted, nor will the Certificate's coverage be rescinded or canceled by reason of any misrepresentations (whether by statements made or omitted) contained in an Application, provided that all of the following requirements, conditions and circumstances, to the extent not waived in writing at the option of the Company, are satisfied: | ... Notwithstanding Sections 2.2 or 2.3, no Claim for Loss will be denied or adjusted, nor will the Certificate's coverage be rescinded or canceled, by reason of any misrepresentation (whether by statements made or omitted) contained in an Application, provided that all of the following requirements, conditions and circumstances, to the extent not waived in writing at the option of the Company, are satisfied: |
| a. The misrepresentations must not have been knowingly made, or knowingly participated in, by: | a. The Borrower must have made the first twelve (12) consecutive full installment payments of principal, interest and impound or escrow amounts in the amounts as called for by the Loan, and all of those payments must have been made from the Borrower's own funds. (A payment will be considered to be "consecutive" only if it is made prior to the date the next scheduled installment becomes due. The "Borrower's own funds" will include any funds used by the Borrower for the purpose of making installment payments, but will not include funds provided directly or indirectly by any Person other than the Borrower who is or was a party to the loan or the related Property transaction, unless expressly Set Forth in the Application.) And, |
| 1. The Insured [Chase] or any other Person which originated the Loan; or | |
| 2. Any of the following Persons: | b. The misrepresentation must not have been knowingly made, or knowingly participated in, by: |
| i. Correspondent lender, mortgage loan broker, or other intermediary underwriting or processing the Loan on behalf of the Insured or any other Person which originated the Loan; or | 1. The Insured or any other Person which originated the loan; or |
| ii. Escrow or closing agents, or any other agent of, or broker for, the Insured or any other Person which originated the Loan acting with respect to the Loan or the related Property Inspection. | 2. Any correspondent lender, mortgage loan broker or other intermediary underwriting or processing the Loan on behalf of the Insured or any other Person which originated the Loan; or |
| b. the Borrower must have made twelve (12) consecutive full installment payments of principal, interest, and impound or escrow amounts in the amounts as called for by Loan, and all of those payments must have been made from the Borrower's own funds.... | 3. An escrow or closing agent, or any other agent of, or broker for, the Insured or any other Person which originated the Loan acting with respect to the Loan or the related Property transaction. |
| | See Exhibit A, § 2.4 |

Exhibit 4 to Declaration of Albert E. Fowerbaugh, Jr.
JPMorgan Chase Bank, N.A. v. Republic Mortgage Insurance Company, et al.
Case No. 2:10-CV-06141 (WJM) (MF)

| Second Amended Complaint Allegations | Arbitration Demand Allegations |
|---|---|
| 44. In connection with many of its rescissions, RMIC flagrantly disregarded the Incontestability Clause, Section 2.4 of the Master Policies, when issuing its purported rescissions. This provision extinguishes RMIC's right to rescind in cases where it otherwise may be triggered, provided only that certain enumerated conditions are met. Essentially, these conditions are (i) that the borrower made 12 consecutive timely loan payments from his or her own funds and (ii) that neither the insured nor the loan originator knowingly made or participated in the misrepresentation. Upon information and belief, all necessary conditions were met in many of the cases where RMIC purported to rescind coverage. | 32. This incontestability provision extinguished RMIC's right to rescind in cases where it otherwise might be triggered by discovery of a borrower misrepresentation, provided only that certain enumerated conditions are met. These conditions are essentially that neither the insured, the loan originator, nor the appraiser knowingly made or participated in the misrepresentation. |
| 44. In connection with many of its rescissions, RMIC flagrantly disregarded the Incontestability Clause, Section 2.4 of the Master Policies, when issuing its purported rescissions. This provision extinguishes RMIC's right to rescind in cases where it otherwise may be triggered, provided only that certain enumerated conditions are met. Essentially, these conditions are (i) that the borrower made 12 consecutive timely loan payments from his or her own funds and (ii) that neither the insured nor the loan originator knowingly made or participated in the misrepresentation. Upon information and belief, all necessary conditions were met in many of the cases where RMIC purported to rescind coverage. | 33. The Master Policy requires twelve consecutive payments for incontestability to attach. Upon information and belief, the borrower made twenty-six consecutive payments on the Relevant Loan, far exceeding the twelve-payment requirement. |
| 94. An actual and concrete dispute exists between Chase and RMIC as to the parties' respective rights under the Mortgage Insurance Policies and under applicable law. | 36. An actual and concrete dispute exists between Chase and RMIC as to the parties' respective rights under the Master Policy and under applicable law. |

5

Exhibit 4 to Declaration of Albert E. Fowerbaugh, Jr.
JPMorgan Chase Bank, N.A. v. Republic Mortgage Insurance Company, et al.
Case No. 2:10-CV-06141 (WJM) (MF)

| Second Amended Complaint Allegations | Arbitration Demand Allegations |
|---|---|
| 95. A declaratory judgment, as set forth in the demand for relief, is appropriate to clarify the respective rights of the parties. The parties have an ongoing relationship, and the issues arising in connection with the present dispute are likely to arise again in the future. A declaratory judgment likely would reduce future litigation. | 38. A declaratory judgment, as set forth in the demand for relief, is appropriate to clarify the respective rights of the parties. The parties have an ongoing relationship, and the issues arising in connection with the present dispute are likely to arise again in the future. |