# EXHIBIT 5

Exhibit 5 to Declaration of Albert E. Fowerbaugh, Jr.
JPMorgan Chase Bank, N.A. v. Republic Mortgage Insurance Company, et al.
Case No. 2:10-CV-06141 (WJM) (MF)

| Second Amended Complaint Allegations | Arbitration Demand Allegations |
|---|---|
| 41. In derogation of its obligations under Section 5.6, RMIC retained a third-party firm, NIA Consulting, for the purpose of conducting bad faith investigations, which produced flimsy, inherently unreliable "evidence" of misrepresentations that it then claimed gave it the right to rescind under Section 2.3 of the Master Policies.<br><br>42. Upon information and belief, in furtherance of its scheme, RMIC and its third-party investigators engaged in several improper practices, including, but not limited to, the following:<br><br>(a) Contacting borrowers without proper authorization, impinging on the borrowers' right to privacy,<br><br>(b) Manipulating borrowers to provide information supportive of RMIC's position, and<br><br>(c) Knowingly submitting expired authorizations to the IRS in order to improperly obtain borrowers' tax return transcripts, violating the borrowers' privacy rights and disregarding IRS guidance on the appropriateness of such requests.<br><br>43. In many cases, RMIC purported to rescind coverage based solely on purported self-serving statements by borrowers about the circumstances surrounding the origination of their loans, none of which RMIC attempted to corroborate. | 26. On October 8, 2009, in response to EMC's claim, RMIC purported to rescind coverage on the Relevant Loan. In its notice of rescission, RMIC alleged that, through its own post-claim investigation, it had obtained "evidence" indicating that the borrower's stated income was false. RMIC obtained this evidence during a purported interview with the borrower in which he allegedly stated that, at the time of the loan transaction, he was working full-time, earning a total of $3,291 per month. Accordingly, RMIC alleged that it believed that the borrower's monthly income was $3,291 per month, not $7,150 per month as stated by the borrower when he applied for the loan, and that this inaccurate information materially affected the risk assumed by RMIC in issuing insurance on the loan. A copy of the rescission letter is attached as Exhibit C. |

*Excerpted allegations are illustrative, not exhaustive, of the duplicative nature of the Second Amended Complaint and the Demand.*
49365 7v3

Exhibit 5 to Declaration of Albert E. Foverbaugh, Jr.
JPMorgan Chase Bank, N.A. v. Republic Mortgage Insurance Company, et al.
Case No. 2:10-CV-06141 (WJM) (MF)

| Second Amended Complaint Allegations | Arbitration Demand Allegations |
|---|---|
| 44. In connection with many of its rescissions, RMIC flagrantly disregarded the Incontestability Clause, Section 2.4 of the Master Policies, when issuing its purported rescissions. This provision extinguishes RMIC's right to rescind in cases where it otherwise may be triggered, provided only that certain enumerated conditions are met. Essentially, these conditions are (i) that the borrower made 12 consecutive timely loan payments from his or her own funds and (ii) that neither the insured nor the loan originator knowingly made or participated in the misrepresentation. Upon information and belief, all necessary conditions were met in many of the cases where RMIC purported to rescind coverage. | 32. This incontestability provision extinguished RMIC's right to rescind in cases where it otherwise might be triggered by discovery of a borrower misrepresentation, provided only that certain enumerated conditions are met. These conditions are essentially that neither the insured, the loan originator, nor the appraiser knowingly made or participated in the misrepresentation.<br><br>34. In this case, the only purported misrepresentation was alleged to have been made by the borrower. Accordingly, all necessary conditions were met for incontestability, and RMIC's purported rescission of coverage directly contravenes the Section 2.4 of the Master Policy. |
| 46. In certain cases, though not disputing that the borrower had made the required number of timely payments, RMIC attempted to justify its rescissions in the face of the Incontestability Clause through unsupported allegations that the originator knowingly participated in the alleged misrepresentation. Upon information and belief, such allegations are based exclusively on self-serving statements supposedly made by the borrower indicating that they provided accurate information about their income to the originator. | 26. On October 8, 2009, in response to EMC's claim, RMIC purported to rescind coverage on the Relevant Loan. In its notice of rescission, RMIC alleged that, through its own post-claim investigation, it had obtained "evidence" indicating that the borrower's stated income was false. RMIC obtained this evidence during a purported interview with the borrower in which he allegedly stated that, at the time of the loan transaction, he was working full-time, earning a total of $3,291 per month. Accordingly, RMIC alleged that it believed that the borrower's monthly income was $3,291 per month, not $7,150 per month as stated by the borrower when he applied for the loan, and that this inaccurate information materially affected the risk assumed by RMIC in issuing insurance on the loan. A copy of the rescission letter is attached as Exhibit C. |

2

Exhibit 5 to Declaration of Albert E. Foverbaugh, Jr.
JPMorgan Chase Bank, N.A. v. Republic Mortgage Insurance Company, et al.
Case No. 2:10-CV-06141 (WJM) (MF)

| Second Amended Complaint Allegations | Arbitration Demand Allegations |
|---|---|
| 47. By way of example, RMIC rescinded coverage on Individual Policy 0631755015 when, according to RMIC's own findings, the retired borrower defaulted after incurring substantial medical costs to pay for treatment of prostrate cancer. Prior to defaulting, the borrower had made *thirty* payments on the loan, the first *twenty-two* of which were made in a timely fashion. Thus, the borrower's payment history plainly satisfied the first condition of the Incontestability Clause. | 33. The Master Policy requires twelve consecutive payments for incontestability to attach. Upon information and belief, the borrower made twenty-six consecutive payments on the Relevant Loan, far exceeding the twelve-payment requirement. |
| 48. Nonetheless, RMIC's notice of rescission disputed that the Incontestability Clause was satisfied, alleging "it appears that persons involved in the process of this loan … knowingly participated in some or all of these misrepresentations." RMIC has produced no credible evidence, however, that Chase or the originator "knowingly made" or "knowingly participated in" the alleged misrepresentation. Though the borrower allegedly stated that he provided accurate information to the originator, this purported after-the-fact statement contradicts the borrower's prior signed statement, made under penalty of perjury, attesting that the income figures included in the application were accurate. In light of these earlier representations, the borrower's purported after-the-fact statement is of dubious, if any, probative value. | 26. On October 8, 2009, in response to EMC's claim, RMIC purported to rescind coverage on the Relevant Loan. In its notice of rescission, RMIC alleged that, through its own post-claim investigation, it had obtained "evidence" indicating that the borrower's stated income was false. RMIC obtained this evidence during a purported interview with the borrower in which he allegedly stated that, at the time of the loan transaction, he was working full-time, earning a total of $3,291 per month. Accordingly, RMIC alleged that it believed that the borrower's monthly income was $3,291 per month, not $7,150 per month as stated by the borrower when he applied for the loan, and that this inaccurate information materially affected the risk assumed by RMIC in issuing insurance on the loan. A copy of the rescission letter is attached as Exhibit C. |
| 49. Similarly, RMIC rescinded coverage on Individual Policy 0606753004 on the ground that one of the two co-borrowers misrepresented his intent to reside at the property obtained by the secured loan. RMIC did not dispute the borrowers' income or any of the other information in the application, and the borrowers, in fact, made *twenty-eight* timely payments – more than twice the number required by the Incontestability Clause. | 33. The Master Policy requires twelve consecutive payments for incontestability to attach. Upon information and belief, the borrower made twenty-six consecutive payments on the Relevant Loan, far exceeding the twelve-payment requirement. |

Exhibit 5 to Declaration of Albert E. Fowerbaugh, Jr.
JPMorgan Chase Bank, N.A. v. Republic Mortgage Insurance Company, et al.
Case No. 2:10-CV-06141 (WJM) (MF)

| Second Amended Complaint Allegations | Arbitration Demand Allegations |
|---|---|
| 52. In certain cases, RMIC "determined" that a misrepresentation had occurred based on flimsy evidence, primarily unsworn, uncorroborated and self-interested statements purportedly made by the borrower. | 26. On October 8, 2009, in response to EMC's claim, RMIC purported to rescind coverage on the Relevant Loan. In its notice of rescission, RMIC alleged that, through its own post-claim investigation, it had obtained "evidence" indicating that the borrower's stated income was false. RMIC obtained this evidence during a purported interview with the borrower in which he allegedly stated that, at the time of the loan transaction, he was working full-time, earning a total of $3,291 per month. Accordingly, RMIC alleged that it believed that the borrower's monthly income was $3,291 per month, not $7,150 per month as stated by the borrower when he applied for the loan, and that this inaccurate information materially affected the risk assumed by RMIC in issuing insurance on the loan. A copy of the rescission letter is attached as Exhibit C. |
| 53. For example, RMIC purported to rescind Individual Policy 0802331526 on the basis of material misrepresentations regarding the borrower's income. The only "evidence" upon with RMIC relied in determining that a misrepresentation had been made was an account by its third-party investigator of a conversation that the investigator had with the borrower more than four years after the loan was originated. At the time of origination, the borrower represented that she owned and operated a pre-school, and the originator verified this fact by contacting the relevant licensing agency. According to the investigator, the borrower, when asked four years later about her income at the time of the loan, stated that she made several thousand dollars less than the income stated on her loan application. The investigator, however, was unable to verify the borrower's statement through contemporaneous documentation. | |

4

Exhibit 5 to Declaration of Albert E. Fowerbaugh, Jr.
JPMorgan Chase Bank, N.A. v. Republic Mortgage Insurance Company, et al.
Case No. 2:10-CV-06141 (WJM) (MF)

| Second Amended Complaint Allegations | Arbitration Demand Allegations |
|---|---|
| 54. RMIC also purported to rescind Individual Policy 0632155014 on the basis of material misrepresentations regarding the borrower's income, relying exclusively upon its third-party investigator's alleged conversation with the borrower's spouse. At the time of origination, the borrower stated his income. The originator verified his employment as a police lieutenant. More than two years after the transaction closed, however, RMIC's investigator asked the borrower's wife about her husband's income at the time of origination, and she allegedly estimated that her husband made several thousand dollars less than the income stated on the application. There is no documentary evidence confirming the wife's years-old recollection. | 24. On information and belief, the Relevant Loan was underwritten under a Bear Stearns Stated Income, Verified Asset ("SIVA") program. Under the SIVA program, a borrower's monthly income was not verified during the process of underwriting a loan; rather, the loan applicant simply stated his or her income in the loan application. SIVA loans were common in 2006-2007. They were well known to, and understood by, RMIC. With regard to the Relevant Loan, the borrower was approved for an adjustable rate mortgage on a total loan amount of $306,000.00. RMIC provided twenty-five percent (25%) coverage – that is, RMIC agreed that should the borrower default on the Relevant Loan, RMIC would pay 25% of the Relevant Loan's value. The property securing the loan is located in Santa Ana, California. |
| 59. Upon information and belief, RMIC completely disregards the contractual requirement that any misrepresentation be "material" in order for its right of rescission to be triggered. Upon information and belief, RMIC made no effort whatsoever to analyze whether or not the alleged misrepresentation actually would have resulted in a denial of coverage, and in many instances, had the true facts been known to RMIC, RMIC still would have insured the loan. | 28. On June 3, 2010, EMC appealed RMIC's purported rescission of coverage on the Relevant Loan and demanded that RMIC reinstate coverage. EMC explained that the loan was approved and funded according to the relevant guidelines, and that RMIC's purported audit of the borrower's income three years later is not material because there was no underwriter error. |
| 65. RMIC purported to rescind a number of other Individual Policies on the basis that the loan application contained inaccuracies concerning information that was expressly not required by the underwriting guidelines. Plainly, the accuracy or inclusion of such information was not material to RMIC's decision to insure the loan. | |

5