## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JPMORGAN CHASE BANK, N.A.,** | Civil No. 10-6141 |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **REPUBLIC MORTGAGE INSURANCE COMPANY and REPUBLIC MORTGAGE INSURANCE COMPANY OF NORTH CAROLINA,** | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This action comes before the Court on a motion by Defendants Republic Mortgage Insurance Company and Republic Mortgage Insurance Company of North Carolina (collectively, "RMIC") to enjoin or stay Plaintiff JPMorgan Chase Bank, N.A. ("Chase") from proceeding with Case No. 13 195 01260 12 before the American Arbitration Association. The arbitration would focus on a single insurance policy that was, at one time, part of this litigation. The arbitration would not focus on—and this Opinion does not address—policies that were never before this Court. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons discussed below, RMIC's motion is **GRANTED** and arbitration is enjoined until further order of this Court.

## I.    PROCEDURAL AND FACTUAL HISTORY

The Court writes solely for the parties. And given the factual and procedural complexity of this case and the relatively narrow scope of the pending motion to enjoin or stay arbitration, the Court will be brief. Chase is a national banking association that makes mortgage loans. From 2001 to 2005, RMIC insured Chase's mortgage loans. When the financial crisis of 2007 through 2009 hit, defaults on these loans skyrocketed. Chase alleges that RMIC responded in bad-

faith, repeatedly rescinding coverage in violation of its contractual duties.  In this litigation, Chase seeks damages for the rescission of hundreds of individual policies, as well as a declaration interpreting the master contract that governs those policies.  Needless to say, adjudicating hundreds of alleged contract breaches in a single case presents obvious difficulties.  These difficulties have been explored with counsel, and they are the subject of a pending motion to dismiss.

Chase filed a first iteration of its Complaint on November 23, 2010.  Compl., ECF No. 1.  That initial pleading described "RMIC's efforts to avoid its obligations under mortgage insurance policies on which Chase is the named insured, a successor/assignee of the named insured or otherwise entitled to payment…."  *Id.* ¶ 1.  The Complaint sought a declaration that RMIC could not rescind policies absent a judicial declaration or arbitral award.  Additionally, it sought damages for breach of contract, breach of fiduciary duty and bad faith insurance practices, and detrimental reliance for approximately 2,000 rescissions.

After RMIC moved to dismiss, Chase withdrew its claims for detrimental reliance, filed an Amended Complaint, and brought a cross-motion for summary judgment on its claim for declaratory relief.  On May 5, 2011, the Court, per the Honorable Stanley R. Chesler, denied Chase's cross-motion and granted RMIC's motion to dismiss the Complaint.  *See JPMorgan Chase Bank, N.A. v. Republic Mortg. Ins. Co.*, No. 10-06141, 2011 WL 1750439 (D.N.J. May 4, 2011).  Judge Chesler granted leave to file an amended complaint so that Chase could pursue breach of contract claims based on RMIC's failure to pay on individual contracts.  *Id.* at *5.

On July 19, 2011, Chase filed its Second Amended Complaint (the "SAC").  That pleading asserts claims for, *inter alia*, breach of contract, bad faith, and breach of fiduciary duty with respect to roughly 375 rescissions.  The SAC makes specific allegations about eight rescissions, two of which are no longer at issue in this litigation.  *See* Letter from Robert A. Goodman to the Hon. William J. Martini (Sept. 6, 2012), ECF 70.  Additionally, the SAC requests a declaration with respect to RMIC's duties and rights under Sections 2.2, 2.3 and 5.6 of the Master Contract Form MP-1103 ("the Master Contract"), which governs all of the rescinded policies at issue in the litigation.

Two months after Chase filed the SAC, RMIC again moved to dismiss.  Shortly thereafter, the case was reassigned to the undersigned.  On May 25, 2012, Chase demanded an arbitration with RMIC.[1]  The proposed arbitration concerns a

---

[1] The Master Contract's arbitration provision states: "Unless prohibited by applicable law, the Insured, at its option, may elect to settle by arbitration a controversy, dispute, or other assertion of liability or rights which it initiates arising out of or relating to this Policy, including the breach, interpretation, or construction thereof."  Master Contract ¶ 7.6(a), ECF 60-5.

single policy ("the Bear Policy") originated by Bear Sterns and currently serviced by Chase. Of crucial significance for purposes of the instant motion, the Bear Policy was named in Chase's initial Complaint. Chase's arbitral demand ("the Demand") seeks a declaration that RMIC breached the Master Contract when it rescinded the Bear Policy. It also seeks damages in breach of contract. On June 19, 2012, RMIC filed the pending motion to enjoin or stay the arbitration. While the instant motion was pending, Chase again changed the number of rescissions it wishes to challenge in this litigation. *See* Revised Exhibit A to the Second Amended Complaint, ECF No. 67-1.

## II. LEGAL ANALYSIS

RMIC argues that Chase waived its right to arbitrate the Bear Policy when it brought suit on that same policy in this Court. The Court agrees. As explained below, arbitration would necessarily resolve issues concerning a policy Chase voluntarily included in this litigation. While the specific policy is no longer before this Court, the underlying contract issues remain front and center in this litigation. Allowing the arbitration to proceed would prejudice RMIC. Because Chase waived its arbitration rights, Chase is enjoined from proceeding with the arbitration until further order of the Court.

Participating in litigation can waive rights to arbitration. When waiver occurs, federal district courts have the power to issue an appropriate injunction. *See Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 461 (3d Cir. 2011) (affirming district court's order enjoining arbitration). "Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 208 (3d Cir. 2010) (quoting *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995) (internal quotations and citations omitted)).[2] A non-exclusive list of six factors guides the waiver analysis:

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the

---

[2] The Third Circuit's decision in *Gray Holdco* purports to apply *PaineWebber* when it states that waiver occurs "only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Gray Holdco*, 654 F.3d at 451 (quoting *PaineWebber*, 61 F.3d at 1068–69). *PaineWebber* actually states that waiver "will **normally** be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *PaineWebber*, 61 F.3d at 1068-69 (emphasis added). The Court does not construe the omission to signal a change in the law.

opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

*Gray Holdco*, 654 F.3d at 451 (citing *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 926-27 (3d Cir. 1992)). These six factors "generally are indicative of whether a party opposing arbitration would suffer prejudice attributable to the other party's delay in seeking arbitration." *Id.* The inquiry is "necessarily case specific." *Id.* "Not all of the factors need be present to justify a finding of waiver." *Nino*, 609 F.3d at 209.

Before turning to the *Hoxworth* factors, the Court must consider the overlap between this litigation and Chase's requested arbitration.

## A. AN ARBITRATION WOULD RESOLVE MERITS ISSUES IN THIS LITIGATION.

As Chase correctly notes, "a party does not waive its right to arbitrate a claim by engaging in litigation with respect to distinct claims." Pl.'s Opp. Br. 8; ECF No. 63 (citing *Doctor's Assoc., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997)). Arbitrated claims are "distinct" from litigated claims if they do not resolve "substantial issues going to the merits" of the litigation. *Distajo*, 107 F.3d at 133. Chase argues that the claims it seeks to arbitrate are distinct from the claims it is now litigating. The Court disagrees.

Chase's argument rests on two main points: First, the arbitration and the litigation revolve around different policies. Second, the arbitration and the litigation implicate different contract provisions. Specifically, the Demand's declaratory count concerns Section 2.4 of the Master Contract, while the SAC's declaratory count concerns Sections 2.2, 2.3, and 5.6. These factual and legal differences are genuine, but they need to be understood in context.

In both the Demand and the SAC, Chase alleges that RMIC engaged in a campaign of "self-help" by rescinding policies in violation of its contractual duties. SAC ¶ 2; 5/25/12 Demand for Arbitration ¶ 3, ECF No. 60-4. According to Chase, this campaign extended to all of the policies named in the SAC and also to the Bear Policy. Just as the Demand and the SAC revolve around similar factual issues, they also implicate similar legal issues. The SAC asserts, *inter alia*, breach of contract claims for more than 150 individual rescissions. At least two rescissions implicate alleged breaches of Section 2.4, *see* SAC ¶¶ 47-51, and it is

possible that others do, as well.  To decide these breach of contract claims, the Court will have to interpret Section 2.4.  An interpretation of Section 2.4 is precisely what Chase wants from an arbitrator.  Ultimately, an arbitration would decide "substantial issues going to the merits of the litigation," *Distajo*, 107 F.3d at 133, with respect to a policy that was once part of this litigation.  Furthermore, the arbitration would have consequences for the policies that remain before this Court. The Court holds that the claims in the arbitration are not distinct from the claims in the litigation.

## B. THE *HOXWORTH* FACTORS FAVOR WAIVER.

As an initial matter, Chase argues that the *Hoxworth* factors are meant only for situations "where a party moves to compel arbitration of a dispute *that is currently the subject of a pending litigation*, which is not the situation in this case." Pl.'s Opp. Br. 11 (emphasis in original).  It offers no caselaw support for its claim. In any event, the question is academic since the requested arbitration would resolve claims that are the subject of this litigation.

Moving to the waiver analysis, the first *Hoxworth* factor, "the timeliness or lack thereof of the motion to arbitrate," *Gray Holdco*, 654 F.3d at 451, clearly weighs in favor of waiver.  Chase filed its initial complaint on November 23, 2010, challenging the rescission of approximately 2,000 policies, including the Bear Policy.  Eighteen months elapsed between that filing and Chase's Demand.  The Third Circuit has found waiver when presented with significantly shorter delays of ten or eleven months.  *See id.* at 455 (citing cases).  As in *Gray Holdco*, the substantial delay here is not "dispositive," but it is troubling, as is Chase's failure to justify its delay.  *See id.*  The first *Hoxworth* factor favors waiver.

The second *Hoxworth* factor is the "extent to which the party seeking arbitration has contested the merits of the opposing party's claims." *Id.* at 451. Where the party seeking arbitration is the plaintiff, this factor requires courts to assess the party's participation in substantive legal proceedings, including opposing any motions to dismiss filed by the defendant.  *Id.* at 456-57.  Chase has twice opposed motions to dismiss, and it also filed a cross-motion for summary judgment.  Chase attempts to make this history disappear by arguing that the second *Hoxworth* factor only looks to merits proceedings that occurred while the Bear Policy was still named in Chase's pleading.  Pl.'s Br. 12.  But regardless of whether the Bear Policy rescission was or was not a part of this case, Chase has still opposed several dispositive motions, and in so doing it has required RMIC to spend both time and money.  RMIC would be prejudiced if it had to devote additional time and expense to an arbitration that addresses merits issues currently

being litigated before this Court.   Because Chase's participation in merits proceedings has been substantial, the second *Hoxworth* factor supports waiver.

The third factor considers "whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings."   *Gray Holdco*, 654 F.3d at 451.   In *Gray Holdco*, the plaintiff notified the defendant of its arbitral demand on the day the demand was filed.   *See Id.* at 457.   That conduct weighed in favor of waiver.   Here, RMIC learned of the Demand only after Chase filed it with the American Arbitration Association. Fowerbaugh Decl. ¶ 8, ECF No. 60-3.   The third *Hoxworth* factor supports waiver.

The fourth *Hoxworth* factor is "the extent to which a party seeking arbitration engaged in non-merits motion practice."   *Gray Holdco*, 654 F.3d at 451. Since the parties have only engaged in motion practice on merits issues, this factor weighs against waiver.

The fifth *Hoxworth* factor is "the party's acquiescence to the court's pretrial orders."   *Id.* at 451.   This factor considers participation in pre-trial conferences. *See Nino*, 609 F.3d at 212.   Chase has acquiesced to the Court's pre-trial orders and has participated in three conferences with the Court.   In *Nino*, the Third Circuit found that participation in ten pre-trial conferences "umistakably" demonstrated that a party "acted inconsistently with the right to arbitrate."   *Id.* (internal quotations and citations omitted).   Similarly, the three conferences in this case signaled to the Court and to RMIC that Chase was intent on litigating this dispute, not arbitrating it.   The fifth *Hoxworth* weighs in favor of waiver.

The sixth and final *Hoxworth* factor is "the extent to which the parties have engaged in discovery."   *Gray Holdco*, 654 F.3d at 451.   Discovery has not begun in this case.   As waiver is normally found "only . . . when both parties ha[ve] engaged in extensive discovery," *id.* at 451, the sixth *Hoxworth* factor weighs strongly against waiver.

In sum, four of the *Hoxworth* factors favor waiver and two do not.   While it is significant that discovery has not begun, the analysis nevertheless supports a finding of waiver.   Taken together, the *Hoxworth* factors establish "'prejudice resulting from the unnecessary delay and expense incurred by [RMIC] as a result of [Chase's] belated invocation of [its] right to arbitrate.'"   *Nino*, 609 F.3d at 209 (quoting *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 224 (3d Cir. 2007)). Chase began this litigation by challenging RMIC's rescission of the Bear Policy. RMIC moved to dismiss, and its motion was granted.   After Chase withdrew its allegations concerning the Bear Policy, RMIC continued to expend time and effort attending court conferences, briefing a motion to dismiss and opposing a cross-motion for summary judgment.   Arbitration will mean a duplication of effort and, potentially, inconsistent interpretations of the same contract language.   On these facts, RMIC has established waiver.

## III.    CONCLUSION

Two years, three complaints, and two opposition briefs into this litigation, Chase "may not escape the effect of its waiver by minimally restyling [its] claim and presenting it for arbitration." *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 652 (7th Cir. 2000).   For the reasons discussed above, RMIC's motion is **GRANTED**.  The Court is careful to recognize that its decision is a narrow one. The decision addresses the arbitrability of a single policy that was included in— and then subsequently removed from—this litigation.   It does not address the arbitrability of policies that were never before this Court.   The message is that a party cannot bring a lawsuit on a host of policies governed by the same contract, then change its mind, withdraw a single policy from litigation, sit on its heels, continue to litigate the other policies, and then, while identical merits issues remain pending in litigation, arbitrate the single policy it withdrew.   Chase is enjoined from proceeding with Case No. 13 195 01260 12 until further order of the Court. An appropriate order follows.


            /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Dated: November 30, 2012**